Bernard L. ALPERT, Regional Director of the First Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 271, INTERNATIONAL HOD CARRIERS' BUILDING AND COMMON LABORERS' UNION OF AMERICA and Rhode Island Allied Building Trades Council, Respondents.

Civ. A. No. 2819.

United States District Court
D. Rhode Island.

Aug. 25, 1961.

Lawrence A. Miller, N.L.R.B., Adelphi, Md., George Norman, Washington, D. C., Robert Greene, Regional Atty., Region 1 N.L.R.B., Boston, Mass., for petitioner.

William J. Sheehan, Providence, R. I., for Reglar, Inc.

Abedon, Michaelson & Stanzler, Julius C. Michaelson, Providence, R. I., of counsel, for respondents.

DAY, District Judge.

This is a petition by the Regional Director of the First Region of the National Labor Relations Board filed pursuant to section 10(*l*) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(*l*), to enjoin the respondents, Local 271, International Hod Carriers' Building And Common Laborers' Union of America (hereinafter called Local 271) and Rhode Island Allied Building Trades Council (hereinafter called the Council) from picketing a construction project of Reglar, Inc. (hereinafter called Reglar) on Pitman Street in the City of Providence, in this State, pending final disposition of a charge filed against them by Reglar. In this charge Reglar alleges that said respondents are and have been engaged in acts and conduct in violation of section 8(b) (7) (C) of said Act.[1]

The evidence presented during the hearing established the following facts: Reglar is a corporation engaged in the business of constructing houses, apartments, and other structures. It pur-

[1] "8(b) It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \*

"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

\* \* \* \* \*

"(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided,* That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c) (1) \* \* \* or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further,* That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services."

chases materials for use in such construction, coming from outside the State of Rhode Island, in an amount in excess of $50,000 annually; its employees are non-union. In 1959, the business agents of the carpenters' and painters' local unions called upon the president of Reglar which was about to construct an apartment house on Broad Street in the City of Cranston for its own purposes—for investment. They expressed their desire to represent the employees of Reglar as their bargaining agents, although Reglar employed no painters. Both of these men were members of the respondent Council as well, one of them also being its Secretary-Treasurer. Upon being advised that the proposed apartment house was being constructed by Reglar as an investment, they made no further attempt to organize its employees. It further appears that said apartment was sold by Reglar shortly after its completion. Thereafter, in May, 1960, the same two business agents again called upon the president of Reglar. On this occasion, they accused the latter of "having gone back on his word" because of the sale of said apartment house. They inquired, "Are we going to do business?" Upon receiving the answer "No", they left his office without further discussion.

Subsequently, in the fall of 1960, Reglar began the construction of a second apartment house on Broad Street in the City of Cranston. On November 22, 1960, pickets appeared at this site bearing signs stating that the carpenters' union, an affiliate of the respondent Council, was picketing the site for organizational purposes. This picketing continued until December 21, 1960 when it terminated. At least one of the same pickets resumed picketing on January 5, 1961, carrying a sign stating that the bricklayers' union, another affiliate of the said Council, was seeking to organize the bricklayers of Reglar. This picketing ceased when the bricklayers employed by Reglar rejected said union as their bargaining agent at an expedited election held by the Board on February 2, 1961.

In the spring of 1961 the intention of Reglar to construct another apartment house on said Pitman Street became a matter of public knowledge. Preliminary construction work began at the site early in May, 1961. A few days before May 16, 1961, the business agent of said Local 271, another affiliate of said Council, visited the job site. While there he talked with at least two of Reglar's employees. In his conversation with one of them, a carpenter, he explained and stressed the advantages of union membership. The reaction of the carpenter thereto was apparently one of a complete lack of interest therein. His efforts to learn from the other, a laborer, the amount of his weekly wages proved unsuccessful and provoked no show of interest in his inquiries, or the reasons therefor.

On May 16, 1961, picketing began at the job site. Once again, one of the same pickets appeared, carrying a sign stating "This Building Is Being Erected By Non-Union Labor". No name of any union appeared on the sign until July 10, 1961, after Reglar had filed its charge as aforesaid with said Board, when the name of Local 271 was added to the sign. This picketing has continued up to the present time without the filing by Local 271 of a petition under section 9(c) of the Act for an election.

On two occasions during the continuance of said picketing operators of delivery trucks, after talking with the pickets, refused to make deliveries. And on one occasion the pickets called the business agent of another affiliate member of the Council for advice as to what action they should take in regard to the delivery of a shipment of structural steel on the job site.

No representative of either of the respondents has contacted the president of Reglar since the inception of the picketing, and the request or demand for union recognition, first made by the business agents of the carpenters' and painters' unions in 1959, has never been withdrawn.

The evidence further establishes that the Council is an association of independent local unions whose members are employed in the building crafts. The business agent of each of said unions acts as its representative on said Council. The only evidence produced concerning the latter's activities would seem to establish that its sole activity during the period herein involved was the settlement of jurisdictional disputes among its member unions. There was no affirmative evidence that it had authorized the picketing of Reglar's project or as a Council had made any demands upon Reglar for the unionization of its employees.

Respondents contend that the picketing which the plaintiff seeks to enjoin is purely for the purpose of advising the public of the facts, and is not for the purpose of recognition or organization and as such is permissible under the exception contained in section 8(b) (7) (C) of said Act. In addition, the Council contends that it is not a labor organization within the meaning of sections 2(5), 8(b) and 10(l) of said Act.

■ To entitle the petitioner to the relief which it seeks in this proceeding, it is not required to prove by a fair preponderance of the evidence that the charge made by Reglar is true. It need only establish by the required degree of proof that there is reasonable cause for the Board to believe that said charge is true. Local 346 International Leather Goods Union, AFL–CIO Etc. et al. v. Compton, Etc., 1 Cir., 1961, 292 F.2d 313; Madden v. International Organization of Masters, Mates and Pilots of America, Inc. et al., 7 Cir., 1958, 259 F.2d 312; Douds v. International Longshoremen's Ass'n, 2 Cir., 1957, 242 F.2d 808.

■ In material part the charge filed by Reglar with said Board on June 29, 1961 alleges that the respondents, labor organizations, since on or about May 16, 1961 had engaged in and were still engaged in unfair labor practices by picketing its premises on said Pitman Street for the purpose of requiring it to recognize them as the bargaining agents of its employees or of forcing or requiring its employees to accept them as their collective bargaining agents, no petition for an election having been filed under section 9(c) of said Act.

Admittedly, here, the picketing had continued for more than 30 days at the time of the filing of said charge. In fact, it was still continuing at the time of the hearing on the instant petition. Neither of the respondents has petitioned for an election under section 9(c). Under such circumstances picketing was and is an unfair labor practice under said section 8(b) (7) (C) if "an object" thereof is to force or require recognition of the respondents, or either of them, by Reglar, or the selection of either of them by its employees as their bargaining representative. The Act does not require that the *sole* object of the picketing be recognitional or organizational. Local 346 International Leather Goods Union AFL-CIO Etc. et al. v. Compton, Etc., supra.

The testimony of the business agent of Local 271, who claimed to be in charge of said picketing, that its sole purpose was to inform the public that the apartment house was being constructed by non-union labor did not impress me. Despite this assertion, he stated that even if Reglar signed a collective bargaining agreement with Local 271, assuming its employees became members thereof, it would have to execute like agreements with every local union in the building trades crafts. The history of the picketing of three Reglar jobs since 1959 by at least three different local unions of the building trade crafts would hardly seem to be merely coincidence. On the contrary, the evidence and the reasonable inferences to be drawn from it indicate a joint, concerted drive by said Local 271 and said other unions, all affiliates of the Council, to compel unionization of Reglar's employees and the employment only of union employees on its projects. In short, I find that there is reasonable cause for the Board to believe that said Local 271, through its agents, had and was engaged in unfair labor practices, in

violation of section 8(b) (7 )(C) of said Act.

█ There remains the question of whether the Board has reasonable cause to believe that the respondent Council had and was engaged in such practices, and is a labor organization within the meaning of said Act. As hereinbefore pointed out, each of the affiliated members of the Council is a local labor union. But the members of such labor unions are not members of the Council although each union has a representative on the Council.

The record in this case is devoid of any evidence that since June, 1959 the Council, as such, has dealt with employers in any way concerning grievances, labor disputes, wages, rates of pay, etc. On the contrary, its activities seemed to have been limited to the settlement of jurisdictional disputes between its constituent members. Similarly, while one may reasonably surmise that the activities of said Local 271 had the sympathy and approval of the individual members of the Council, there is no showing of any participation in said picketing by the Council itself. Surmise or suspicion does not amount to proof of reasonable cause to believe.

The cases cited by the Board in support of its contention that it has reasonable cause to believe that the Council is a labor organization within the meaning of said Act are in my opinion clearly distinguishable from this case. After a careful consideration of the evidence, I find and conclude that the evidence is insufficient to warrant a finding that there is reasonable cause to believe that the Council is a labor organization within the meaning of said Act, as claimed by the Board, and that it has engaged in unfair labor practices within the meaning of section 8(b) (7) (C). This finding, of course, is not determinative of the question of its status or the truth of the charge filed against it, if additional evidence with respect to these issues is presented at the hearing before the Board upon the merits of said charge.

The petition is dismissed as to the Council.

Finding, as I do, that there is reasonable cause to believe that Local 271, through its agents, has engaged and is engaged in unfair labor practices in violation of said Act, in order to preserve the issue for orderly determination by the Board, as provided in said Act, it is appropriate, just and proper that pending the final disposition of said charge by said Board, said Local 271, its officers, agents, servants, employees, etc., and all persons acting in concert or participation with them be enjoined from the further picketing of said premises on Pitman Street.

Petitioner will prepare and present for entry an appropriate order in accordance with the findings and conclusions herein set forth.